FILED
SUPERIOR COURT
OF GUAM

2019 JUN -3 PM 2:46

CLERK OF COURT

By:_____

# IN THE SUPERIOR COURT OF GUAM

ST CORPORATION,

                Plaintiff,

      vs.

MARCUS LOPEZ,

              Defendant.

Civil Case No: CV0905-18

**DECISION AND ORDER**

(Plaintiff ST Corporation's
Motion for Summary Judgment)

## INTRODUCTION

This matter came before the Honorable Anita A. Sukola on March 7, 2019, pursuant to ST Corporation's ("ST Corp") Motion for Summary Judgment. Attorney Edwin J. Torres appeared on behalf of ST Corp. Attorney Michael J. Berman appeared on behalf of Marcus Lopez ("Lopez"). Upon review of the written and oral arguments, and legal authorities presented by the Parties, the Court hereby **DENIES** ST Corp's Motion for Summary Judgment.

ST Corp filed the instant Motion for Summary Judgment pursuant to Guam Rule of Civil Procedure 56(a) on January 17, 2019. ST Corp's Motion was supported by declarations from Shirley Torres ("Torres"), Joseph Razzano ("Razzano"), and Ted Balo ("Balo"), who are all affiliated with ST Corp. Lopez filed his Opposition and supporting affidavit on February 14, 2019.

ORIGINAL

ST Corp then filed its Reply and supporting declaration by Razzano on February 27, 2019. The Court heard oral arguments and took the matter under advisement on March 7, 2019.

## BACKGROUND

### A. The Parties' Agreement

ST Corp is a local company that produced custom imprinted beverage cups for Lopez. Lopez was the proprietor of a local business known as Guam Coffee Company ("Guam Coffee Co."). Def.'s Aff. at Ex. A. On or about September 22, 2016, the Parties began discussing an order for custom cups. Torres Decl. at Ex. C-9. The order was negotiated between Lopez and ST Corp's sales representative Reanna Zamora ("Zamora") through text messages, emails, and voice calls.[1] Id. at Ex. C-13. Two quotations specifying the quantities, prices, and total cost of the order were submitted to Lopez for approval.[2] Id. The prices were an aggregate of the costs for various cups and lids, imprinting of the logo, shipping, and delivery. Id. No delivery date nor payment due date were specified on the two quotations. Id. The quotations were signed by both Lopez and Zamora, who was acting on behalf of ST Corp. Id.

Lopez submitted Guam Coffee Co.'s logo for the cup design's imprints. Id. at Ex. C-9. Prior to imprinting, ST Corp sought approval of the design layout. Pl.'s Mot. Summ. J. at 6. Digitized mock-ups of the final product were provided for approval, which were all subsequently signed by Lopez. Id. at 6-8. With the quotations and signatures acquired, ST Corp began manufacturing the goods. Id. at 6. All cups were imprinted with Guam Coffee Co.'s logo, whereas the lids had none. Pl.'s Reply at 3. Imprinting of the cups finished in December 2016. Pl.'s Mot. Summ. J. at 6. The completed goods arrived on Guam in January 2017. Id.

### B. Delivery of the Goods

On February 7, 2017, ST Corp requested an update from Lopez regarding his order pickup. Torres Decl. at Ex. C-13. On the same day, Lopez informed ST Corp that Guam Coffee Co. was sold. Id. Lopez informed ST Corp that it should speak with the new owner so Guam Coffee Co. could purchase the remaining stock when it had events. Id. On February 24, 2017, ST

---

[1] Lopez identifies Zamora as "Rianna" in text messages.
[2] Quotations were dated October 7, 2016, and October 21, 2016.

Corp expressed concern regarding the undelivered stock, noting the goods could not be resold due to Guam Coffee Co.'s logo. Id. at 14. On the same day, Lopez responded via text, "I have the contract.no worries" and requested for more time to "order the cups . . . [.]" Id.

On or about April 5, 2017, Lopez told ST Corp he would try and resell the cups at a lower price, personally losing out on $20 to $30 per case. Id. at 16. On April 10, 2017, Lopez ordered hot and cold cups, one case per size. Id. at 17. He indicated the order would be delivered to Pestex; Lopez would pay cash on delivery. Id. On April 11, 2017, Lopez sent a message requesting "a copy of the contract that [he] had to sign." Id. On April 12, 2017, Lopez inquired whether the quotation acted as ST Corp's contract and purchase order; Zamora confirmed it did. Zamora also stated that she was no longer involved in the matter and urged him to contact Ed Torres of ST Corp. Id. at 18.

On January 18, 2018, ST Corp informed Lopez of its intent to seek legal recourse regarding the agreement. Id. at 20. Lopez replied, "Ok, we are doing our best to purchase as soon as we can. Thank you." Id. Afterwards, Lopez alleged he received quotations from Zamora as a result of their negotiations. Id. He stated his signature was approval for only the set and case prices, nothing more. Id. Lopez claimed he never issued a purchase order for the entire quotation total. Id. He argued his subsequent cup orders were not pursuant to any obligation but were by virtue of "goodwill and good faith" as he no longer owned Guam Coffee Co. Id. Lopez last picked up a partial order on October 5, 2018. Id. at Ex. F-3. As of November 21, 2018, ST Corp's internal valuation purported that the remaining inventory was valued at $37,212. Id. at Ex. E-21.

## C. ST Corp's Subsequent Conduct

When Lopez ceased ordering, ST Corp claimed it stored the goods in a warehouse and began looking for buyers. Pl.'s Reply at 3. ST Corp was able to sell all the lids as it did not have any customization, i.e. imprints. Id. Despite numerous attempts, ST Corp could not resell the cups as third-party companies did not want another business's logo. Id. Moreover, ST Corp claimed removing the logos would damage the cups, thus devaluing it to an unreasonable price.

Torres Decl. at Ex. F-2. It also asserted that placing a label over the logo would not suffice as labels are easily removed due to a drink's temperature. Razzano Decl. at Ex. A-14. ST Corp claims damages are an aggregate of the goods' total prices, storage fees, and accruing interest. Pl.'s Mot. Summ. J. at Ex. F-4. As of February 27, 2019, ST Corp demands damages of $31,968. Pl.'s Reply at 3.

**DISCUSSION**

**A.      Motion for Summary Judgment Standard**

In support of its Motion, ST Corp argues there is no genuine issue of material fact, thus summary judgment should be granted. ST Corp relies on the theories of Specially Manufactured Goods and Promissory Estoppel. Pl.'s Mot. Summ. J. at 2, 7. In opposition, Lopez argues the Motion should be denied because there are disputes as to whether a valid agreement was formed and if the remedy calculations are supportable. Def.'s Opp'n at 2.

The Guam Rules of Civil Procedure ("GRCP") states summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." GRCP 56(c). A genuine dispute "occurs where there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact finder." Hawaiian Rock Products Corp. v. Ocean Housing, Inc., 2016 Guam 4, ¶ 26. The dispute must be to a material fact, that is, a fact "that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." Bank of Guam v. Flores, 2004 Guam 25, ¶ 8.

When analyzing a summary judgment motion, a court "must view the evidence and draw inferences in the light most favorable to the non-movant." Helmani v. Hemlani, 2015 Guam 16, ¶ 13. The movant bears the initial burden of showing that "undisputed facts in the record support a *prima facie* entitlement to the relief requested." Hawaiian Rocks, 2016 Guam 4, ¶ 27. If such a showing is made, "the non-movant may not simply deny the allegations to create a factual dispute,

but is obligated to set forth specific facts showing there is a genuine issue for trial." Gayle v. Hemlani, 2000 Guam 25, ¶ 21 (citations omitted); GRCP 56(e).

**B.** **Quantity as an Ambiguous Term Under General Contract Principles**

For a sale of goods contract to be breached, a valid contract must exist under Guam's Uniform Commercial Code ("UCC"). 13 GCA § 2012. In this matter, ST Corp alleges a valid contract was formed by the specially made goods exception and was subsequently breach by Lopez. Nonetheless, beyond the statute of frauds exception, an enforceable contract must still be "valid in other respects." § 2201(2)(a). To form a contract for goods, there must be a valid offer and acceptance. § 2206. Here, the issue is not whether a contract was formed through specially made goods; it is whether the Parties manifested a sufficient showing of an agreement to form a valid contract. § 2204(1). A deficient contract remains valid so long as "the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy." § 2204(3).

In this matter, the preliminary issue of contract formation is whether a valid offer was made. Because Guam's UCC does not define an offer, Guam's common law supplements its provisions. See § 1103 (stating the principles of law and equity apply unless displaced by Guam's UCC). The Supreme Court of Guam defines offer as a present manifestation of assent to bargain that is reasonably communicated and has sufficiently definite essential terms. Mobil Oil Guam, Inc. v. Tendido, 2004 Guam 7, ¶ 34 (citing 18 GCA § 85102).

Quantity is a definite and invariable term in a UCC contract. Unif. Commercial Code § 2-201 cmt. 1 (2003). Without sufficient definiteness or a means to establish it, no reasonable basis for a remedy can be determined. Quantity need not be precise or accurate; however, recovery would be limited to the amount stated. Id; 13 GCA § 2201.

In 2003, the Supreme Court of Guam adopted the traditional approach, *i.e.* "plain meaning" approach, to contract interpretation.[3] Wasson v. Berg, 2007 Guam 16, ¶ 11 (citing Guam United Warehouse Corp. v. DeWitt Transp. Servs. of Guam, Inc., 2003 Guam 20, ¶ 24; Natl Union Fire

---

[3] Wasson states two approaches courts use to interpret contracts: traditional and modern.

Ins. Co. of Pittsburgh, Pa. v. Guam Hous. & Urban Renewal Auth., 2003 Guam 19, ¶ 36 n.17). The traditional approach looks to the four corners of a contract to determine whether ambiguity exists as a matter of law. If ambiguity exists, the court may allow extrinsic evidence to clarify the ambiguity as a question of fact. If no ambiguity exists, extrinsic evidence is inadmissible. The Court's adherence was reaffirmed in 2016. Hemlani v. Melwani, 2016 Guam 33, ¶ 20 (citing Wasson at ¶ 13).

The Parties dispute whether the agreement's quantity is founded on ST Corp's quotation or on Lopez's "as needed basis" claim. Pl.'s Mot. Summ. J. at 2, 7; Def.'s Opp'n at 2. A sufficiently definite quantity is material as it is requisite to find a valid contract. 13 GCA § 2204(1), (3); Mobil Oil Guam at ¶ 34. Relevant here is whether the Parties' dispute regarding quantity controls the validity and obligations of the alleged contract.

Whether a writing is a quotation or an offer is primarily a question of the parties' intent. Boydstun Metal Works, Inc. v. Cottrel, Inc., 519 F.Supp. 2d 1119, 1129 (D. Or. 2007). Quotations may be binding contracts depending on the evidence presented. If a quotation contains language of commitment, is formed after prolonged negotiations, contains detailed terms, or is created following a request, it may be deemed an offer. Id.

When a contract is reduced to writing, the parties' intentions are determined by the plain meaning of the language. Id. at ¶ 17. In both quotations from ST Corp, the writing includes words and phrases denoting negotiable-language: "**QUOTATION**," "**Re: Price Quotation . . .**," "We are pleased to submit our price quote . . .," "Our price quote," and "Thank you for the opportunity to quote." Id. In Boydstun, the court stated a writing's language suggests whether a quotation or offer was intended by the parties. The court found language such as "please find enclosed quotes," "thank you for the opportunity to quote," and "QUOTE," were suggestive of a quotation rather than an offer. Id. Furthermore, "quote" is commonly understood to invite an offer, whereas "I offer" and "I promise" suggests creation. Id.

Here, the only party that has explicitly called the quotation a contract is Lopez. Torres Decl. at 14, 17-18. ST Corp did not use language that implied a legal offer, but instead used

language similar to Boydstun, i.e. "We are pleased to submit our price quote . . .," "Our price quote," and "Thank you for the opportunity to quote." Torres Decl. at 14, 17-18. "Quotation" was also capitalized, bolded, underlined, and italicized at the top-center of the writing; it was the only word ST Corp used to reference the alleged contract. Id. Word emphasis, negotiable-language, and lack of words showing an offer are more indicative of an invitation to offer instead of a commercial offer. Regardless, the absence of words denoting a legal offer is not dispositive in finding an offer; it only weighs against it.

The absence of essential terms does not invalidate a contract since Guam's UCC provides gap fillers for open terms. 13 GCA § 2204, 2305. The more terms left open, the less likely a binding contract is found. Boydstun at 1130; N. Dev. Corp. v. Golden Int'l Corp., Civil No. 93-00070A; 1994 WL 550300, 3 (D. Guam App. Div. 1994) (although unpublished, it is cited in Guam's UCC). The only contract term that is invariable is quantity. 13 GCA § 2201. As such, the case at hand and Boydstun contain significant distinctions. Here, the Parties only dispute that is within the four corners of the writing is the quantity's interpretation. Torres Decl. at 7, 20. In Boydstun, there was a total absence of quantity, price, payment, and delivery time which weighed against finding an offer. In contrast, ST Corp's writing contained most of the essential terms in some form; the only issue was its interpretation. Here, the quotation includes prices, parties, approximate times for payment and performance, quantity, and subject matter; even so, the Parties have not raised any other disputes besides quantity.

The Parties' conflicting evidence presents a material dispute regarding an essential term's interpretation. Term ambiguity, although usually a question of fact, now rests on factually based evidence. Hence, if viewing the evidence in a light most favorable to the non-movant, the quantity's reasonable interpretation should be left to the proper fact-finder, in this case, a jury. Id. at 3-4 (citing Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160 (C.A.D.C. 1981); Lemelson v. Ideal Toy Corp., 408 F.2d 860 (2d Cir. 1969)).

Considering the evidence and inferences in a light most favorable to Lopez, the Court finds that a dispute of a material fact does exist. Whether the Parties created an enforceable contract now

becomes a question of fact reserved for a trier of fact. As there is genuine dispute as to a material fact, summary judgment is improper.

**C.      Quantity as an Ambiguous Term under Promissory Estoppel**

If a party knows his promise will reasonably induce an action or forbearance by another party, and does, in fact, induce the expected action or forbearance, the promise will be enforced under promissory estoppel to prevent injustice. Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218, 227 (2011). Promissory estoppel requires the following: (1) a promise that is clear and unambiguous in its terms; (2) reliance by a party to whom the promise is made; (3) reliance that is both reasonable and foreseeable; and (4) the party asserting estoppel must be injured by its reliance." Id. at 225. As promissory estoppel is not codified in the Guam Code Annotated, the principles of law and equity supplement the law. 13 GCA § 1103.

A "clear and unambiguous" promise is imperative for a court to determine the parties' duties and obligations to one another. Id. at 226. The promise need only be definite enough to "determine the scope of the duty, and the limits of performance . . . to provide a rational basis for the assessment of damages." Id; see Ladas v. California State Auto. Assn., 19 Cal. App. 4th 761, 770 (1993). The question here is similar to the previous analysis in Discussion (B) as both deals with the ambiguity of the terms. If the supposed contract's promise is so lacking that the parties' agreed obligations cannot be ascertained, it follows that no breach and therefore no contract exists. Aceves at 226; see Ladas at 770.

The Parties dispute whether the agreement's quantity is founded on ST Corp's quotation or on Lopez's "as needed basis" claim. Pl.'s Mot. Summ. J. at 2, 7; Def.'s Opp'n at 2. A definite quantity is material as it is requisite under promissory estoppel. Aceves at 225. Relevant here is the first element of promissory estoppel: whether the promise was "clear and unambiguous in its terms." Id.

ST Corp argues the contract's terms were definite and unambiguous. Pl.'s Mot. Summ. J. at 7. ST Corp claims it sought approval from Lopez at every stage of the contract, including the goods' pricing and design. Torres Decl. at 7. ST Corp claimed Lopez was the party that requested

the order and gave instructions to commence its obligations. Id. ST Corp alleges Lopez's promise to pay for the goods was demonstrated through his signature on the quotation and mock-up designs. Id. Hence, the request, approvals, instructions, and signatures were all assurances of Lopez's intention to uphold the contract. Id. at 10.

Lopez denies ST Corp's allegations. He argues that although he agreed to buy cups, it was only on an "as needed basis." Def.'s Opp'n at 2. However, apropos of the cups, Lopez's pleadings had merely stated factual disputes exist, citing the entirety of Lopez's evidence as proof without identifying any supporting evidence or inferences. Id.

In a motion for summary judgment, the non-movant must cite specific facts supporting his factual dispute. Gayle at ¶ 21 (citations omitted); GRCP 56(e). Although Lopez has only given a bare-bones argument[4], by viewing the evidence in favor of Lopez, the Court has observed the following: On an undetermined date, Lopez sought clarification on the quotation he signed.[5] Torres Decl. at 18. He contacted Zamora who had negotiated the agreement with him. Id. Zamora informed Lopez that the quotation did, in fact, serve as a contract and purchase order. Id. At this time, Zamora was disengaged from the matter and Lopez was referred to Ed Torres of ST Corp. Id. On a later undetermined date, Lopez told ST Corp that although he signed the quotation, he only agreed to the prices listed—nothing more.[6] Id. at 20. He asserted he never issued a purchase order, but was instead purchasing the goods on an "as needed basis" and through goodwill. Id; Def.'s Opp'n at 2; Torres Decl. at 20. During oral arguments, Lopez called Zamora to be a witness, instead of Torres, as Zamora was the point of contact between ST Corp and Lopez. Def.'s Oral Arg. The Court notes Zamora does not have a declaration but her messaging conversations with Lopez are submitted under Torres's declaration. Torres Decl. at 9-20. Similarly to the previous discussion, there is conflicting evidence in interpreting the duty and obligations, and whether

---

[4] Lopez merely states: "The record of this case is clear that material facts are in dispute. These material facts in dispute are as follows: (1) Defendant only agreed to buy the Cups on an "as needed" basis. . . . These material issues of fact that are in dispute are clearly set forth in Defendant's Affidavit with Exhibits attached hereto as "Exhibit 'A'." Def.'s Opp'n at 2.

[5] Messages were sent and received sometime after April 12, 2017. Due to the low image quality of Exhibit B, the exact date is unclear. Torres Decl. at 17-18.

[6] Messages were sent and received sometime after January 18, 2018. Due to the low image quality of Exhibit B, the exact date is unclear. Torres Dec. at 20.

mutual assent existed. Pursuant to summary judgment law, the dispute of ambiguity becomes a question of fact.

Considering the evidence and inferences in a light most favorable to Lopez, the Court finds that a dispute of material fact does exist. Whether Lopez was obligated to buy pursuant to the agreement or on an "as needed basis" is a question of fact reserved for a trier of fact. In the case of questions of fact, reasonable minds can differ. As there is genuine dispute as to a material fact, summary judgment is improper.

### D.    Reasonableness as a Recovery Limitation

As one of a seller's general remedies, an aggrieved seller may resell and recover damages for the goods affected when a buyer repudiates a contract. Id. at § 2703, 2703(d). "Where the resale is made in good faith and in a commercially reasonable manner[,] the seller may recover . . . any incidental damages allowed[.]" Id. at § 2706(1). "Incidental damages . . . include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyers' breach, in connection with return or resale of the goods or otherwise resulting from the breach." Id. at § 2710.

The limitation of reasonableness is further underscored by the Supreme Court of Guam, which has stated, "[T]he plaintiff . . . cannot recover those damages that could have been avoided. Damages that the plaintiff could have avoided with reasonable effort without undue risk, expense, burden, or humiliation will be considered either as not having been caused by the defendant's wrong or as not being chargeable against the defendant." Haeuser v. Department of Law, 2005 Guam 14, ¶ 21. As applied to mitigation, the Supreme Court of Guam has stated "[t]he exercise of due or reasonable diligence is a question of fact[.]" Id. at ¶ 18 (internal citations and quotations omitted).

The Parties dispute whether ST Corp's storage charges are recoverable damages under the law. ST Corp's subsequent actions of the alleged breach are material, as reasonableness is a criterion for permissible recovery. 13 GCA § 2703, 2703(d), §2706(1). Here, the Court must determine whether storing the cups, instead of disposing, was a reasonable effort to minimize loss.

ST Corp argues it has met its duty of mitigation when it sold all the lids Lopez did not purchase.[7] Pl.'s Reply at 3. ST Corp maintains it tried to further mitigate damages by making numerous attempts to sell the imprinted cups; however, buyers were unwilling to purchase goods with another company's logo. Id. ST Corp asserts it cannot resell the cup without making essential alterations, thus unreasonably reducing its value. Torres Decl. at Ex. F. As a result, ST Corp has stored the remaining goods in a warehouse in which it continues to accumulate storage fees. Pl.'s Mot. Summ. J. at 9. ST Corp states storage was necessary as it gave ST Corp the opportunity to sell the goods after Lopez's refusal. Alternatively, had the goods been disposed, ST Corp would have diminished its chances of recovering damages. Pl.'s Reply at 4. Presently, ST Corp continues to store the remaining goods. Id.

Lopez argues mitigation was not proper due to ST Corp's unsupportable claim for storage fees. Def.'s Opp'n at 2. During oral argument, Lopez asserted that ST Corp's reasoning for storing the cups undercuts its argument that the goods are unsellable. Def.'s Oral Arg (Mar. 7, 2019). Lopez maintains ST Corp's continuous storage suggests the cups have value and thus are still marketable. Id. However, if ST Corp insists the cups are not marketable, Lopez stresses that it should have disposed of the goods once he refused acceptance. Id.

Whether the injured party violated its duty to mitigate damages is a question of fact when conflicting evidence exists. Guam United Warehouse Corp. at ¶ 26 (internal citations omitted). Here, the Parties are at odds as to whether ST Corp exercised reasonable efforts to mitigate by storing the cups despite Lopez's refusal to accept it. Upon Lopez's repudiation, ST Corp had five options for mitigation: (1) sell the cups "as is" using the quotations' stated prices, (2) sell the cups "as is" at a reduced price, (3) alter the cups and sell it at a reduced price, (4) continue storing the cups until post-judgment, or (5) dispose of the cups immediately. ST Corp had already exhausted option one (1). Pl.'s Reply at 3. It also argues option two (2) and three (3) are unreasonable. Id. ST Corp then chose option four (4) over option five (5) as it preferred Lopez to accept and pay for the

---

[7] Plaintiff corrected an earlier statement where it declared it did not mitigate damages. Pl.'s Reply at 3.

goods. Id. However, Lopez considers this choice improper mitigation and thus is unreasonable recovery. Def.'s Oral Arg.

ST Corp purports lowering the sale price of the cups is unreasonable mitigation. Pl.'s Reply at 3. However, on the inquiry of reasonableness, that determination is a question of fact. Town House Dept. Store, Inc. v. Ahn, 2003 Guam 6, n.25. The injured party has a duty to exercise reasonable care and diligence in minimizing resulting damages, and so cannot recover losses that are avoidable through reasonable efforts and expenditures. Cf. Valencia v. Shell Oil Co., 23 Cal. 2d 840, 844 (1944) (stating the injured party had a duty to expend funds to obtain her property as soon as possible and so is only entitled to storage costs for a reasonable time). See Haeuser at ¶ 21. Regardless, this duty does not require an injured party to do what is unreasonable. Jordan v. Talbot, 55 Cal. 2d 597, 611 (1961) (noting when expenditures are necessary to minimize loss, a financially unable person does not have a duty to expend as it is unreasonable mitigation). Here, it is feasible ST Corp had the financial capability to absorb the loss of reselling the cups at a lower price. Although absorbing a loss and expending money are not synonymous, the inquiry becomes a reasonable comparison, i.e. a question of fact. Cf. Valencia at 844. Therefore, if the evidence does show ST Corp was in the financial position to absorb the loss, it could have had a duty to mitigate. Id.

When conflicting evidence exists, it is a question of fact for a trier of fact. Consistent with the authorities stated above, whether ST Corp's storage was appropriate mitigation despite Lopez's refusal is a question of fact. As such, reasonable minds can differ. See Mayflower Ins. Exchange v. Gilmont, 280 F.2d 13, 17 (9th Cir. 1960) (stating "Materiality is a question of fact. It is a question for the jury when reasonable minds can differ[.]"); see also Rubio v. Capital One Bank, 613 F.3d 1195, 1211 (9th Cir. 2010) (stating when reasonable minds can differ, the court does not become a finder of fact). ST Corp maintains storage was essential to facilitate mitigation, and its continued storage still allows Lopez the opportunity to claim the cups. Pl.'s Reply at 3. Lopez counters that either the cups are still sellable or ST Corp is accruing unreasonable and unnecessary damages.

Def.'s Opp'n at 2. Since conflicting evidence exists, ST Corp's recovery efforts become a genuine dispute of material fact; thus summary judgment is improper.

**CONCLUSION**

By preponderance of the evidence and based on the foregoing reasons, the Court **DENIES** ST Corp's Motion for Summary Judgment.

A *Status Hearing* is set for ___7/25/19___ at ___10 a.m.___.

**SO ORDERED** ___6/3/19___.

_____
The Honorable Anita A. Sukola
Judge, Superior Court of Guam

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of ___civile___
Benson
Date 6/8/19 Time: 3p
Deputy Clerk, Superior Court of G___